[Cite as *State v. Brentlinger*, 2019-Ohio-4989.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 19 CAC 05 0032 |
| BRYANT BRENTLINGER | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the Delaware County
Municipal Court, Case No. 19CRB00297

JUDGMENT:     Reversed and Vacated

DATE OF JUDGMENT ENTRY:     December 3, 2019

APPEARANCES:


For Plaintiff-Appellee

CHRISTOPHER E. BALLARD
Assistant City Prosecutor
70 North Union Street
Delaware, Ohio  43015

For Defendant-Appellant

DOMINIC L. MANGO
Mango Law Office
43 South Franklin Street
Delaware, Ohio  43015

*Hoffman, J.*

**{¶1}** Defendant-appellant Bryant Brentlinger appeals his convictions entered by the Delaware County Court of Common Pleas, on one count of possession of marijuana and one count of possession of marijuana paraphernalia, after the trial court found him guilty following a bench trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On February 14, 2019, Appellant was cited for possession of marijuana, in violation of R.C. 2925.11(C)(3); and possession of marijuana paraphernalia, in violation of R.C. 2925.14(C). Appellant appeared before the trial court for arraignment on February 20, 2019, and entered pleas of not guilty to the charges.

**{¶3}** Appellant filed a motion to suppress on April 4, 2019. Deputy Flahive testified, at the suppression hearing he was on routine patrol on the evening of February 14, 2019, traveling northbound on South Section Line Road in Delaware, Ohio, he conducted a random registration check of the vehicle in front of him. The information the deputy received revealed the operator's license of the registered owner of the vehicle was suspended. The registered owner was one Brittany Brentlinger, Appellant's sister. At this point, Deputy Flahive was unable to readily identify the driver as the register owner prior to effectuating the stop as he was behind the vehicle and it was dark outside.

**{¶4}** Deputy Flahive followed the vehicle for approximately one and a half miles until he found a safe area in which to conduct a stop of the vehicle. The deputy then activated his overhead lights. As Appellant turned right into a parking lot, Deputy Flahive illuminated the driver's side of the vehicle with a spotlight and observed the driver was male; therefore, not the registered owner. Deputy Flahive exited his cruiser and approached the vehicle. As the deputy approached, he again saw the driver was not

female.  The deputy made contact with the driver and asked for his license.  While Deputy Flahive was running the license check, he detected the odor of marijuana.  Appellant and his passenger were subsequently arrested.

**{¶5}** Appellant asserted, once the deputy discovered, prior to a face-to-face encounter, Appellant did not match the description of the registered owner, the continued detention of Appellant following such determination was unjustified.  Appellant further argued the deputy violated his Constitutional rights by continuing to detain him following his face-to-face encounter with him.

**{¶6}** The trial court overruled Appellant's motion to suppress from the bench.

**{¶7}** The matter proceeded to a bench trial. The trial court found Appellant guilty of both offenses.  The trial court imposed a total fine of $20.

**{¶8}** It is from his convictions, Appellant appeals, raising as his sole assignment of error:

THE TRIAL COURT ERRED WHEN IT OVERRULED THE MOTION OF APPELLANT TO SUPPRESS EVIDENCE WHEREIN IT FOUND THE STOP OF THE DEFENDANT'S VEHICLE AND SUBSEQUENT DETENTION LAWFUL.

**{¶9}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v.*

*Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist. 1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist. 1994).

{¶10} When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶11} It is well established an officer may stop a motorist upon his or her observation the vehicle in question violated a traffic law. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). "[E]ven a de minimis traffic violation provides probable cause for a traffic stop." *Id.* at 9. "Trial courts determine whether any violation occurred, not the extent of the violation." *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, ¶ 27. Moreover, an officer is not required to prove the suspect

committed an offense beyond a reasonable doubt or even satisfy the lesser standard of probable cause to believe the defendant violated the law. *Westlake v. Kaplysh*, 118 Ohio App.3d 18, 20, 691 N.E.2d 1074 (1997)

{¶12} To conduct a constitutionally valid investigatory stop, a police officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual has committed, is committing, or is about to commit a crime. *State v. Williams*, 51 Ohio St.3d 58, 60, 554 N.E.2d 108 (1990). The propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶13} Appellant does not argue Deputy Flahive lacked reasonable suspicion to initiate the stop. Rather, Appellant contends, once Deputy Flahive discerned he was not female; therefore, could not be the registered owner, the deputy no longer maintained reasonable suspicion and was not justified in further detaining him. We agree.

{¶14} The evidence established Deputy Flahive was on routine patrol on the evening of February 14, 2019, when he decided to conduct a random registration check of the vehicle in front of him. Deputy Flahive learned the operator's license of the registered owner of the vehicle, Brittany Brentlinger, was suspended. The deputy was unable to readily determine the gender of the driver prior to effectuating the stop as he was behind the vehicle and it was dark outside. Deputy Flahive followed the vehicle for approximately one and a half miles until he found a safe area in which to conduct the stop. The deputy then activated his overhead lights. As Appellant turned right into a parking lot, Deputy Flahive illuminated the driver's side of the vehicle with a spotlight and

observed the driver was male; therefore, not the registered owner. Nonetheless, Deputy Flahive exited his cruiser and approached the vehicle. As the deputy approached, he again saw the driver was not female. The deputy made contact with the driver and asked for his license. While Deputy Flahive was running the license check, he detected the odor of marijuana. Appellant and his passenger were subsequently arrested.

{¶15} In *State v. Chatton,* 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984), the Ohio Supreme Court, addressing a similar situation, held:

> [W]here a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable. As a result, any evidence seized upon a subsequent search of the passenger compartment of the vehicle is inadmissible under the Fourth Amendment to the United States Constitution. *Id.* at 63.

{¶16} In *Chatton,* a police officer stopped the defendant for a suspected failure to display license plates. *Id.* at 59. Upon approaching the vehicle, the officer noticed a temporary tag was visible in the rear windshield. *Id.* Nonetheless, the officer continued to the driver's side of defendant's vehicle and requested the defendant produce his driver's license. *Id.* The officer subsequently learned the defendant's license was

suspended and placed the defendant under arrest for driving while under a suspension. *Id.* The defendant was ordered to step out of his vehicle, was patted down, and was handcuffed. *Id.* Upon searching the passenger compartment of the vehicle, the officer found a loaded Charter Arms .44 Special revolver underneath the driver's seat. *Id.*

**{¶17}** The defendant was indicted for carrying a concealed weapon. *Id.* He moved to suppress evidence of the gun on the basis the search of his vehicle was unlawful. *Id.* at 59-60. The trial court overruled the motion to suppress. *Id.* at 60. The defendant then entered a plea of no contest to the charge in the indictment and a judgment of conviction was entered thereon. *Id.* The court of appeals reversed the conviction, finding the trial court erred in not suppressing the evidence of the gun. *Id.* The court of appeals reasoned any reasonable suspicion the defendant was violating the law was extinguished upon the officer's observance of the temporary tag and the detention of the defendant beyond that moment was unlawful. *Id.* The Ohio Supreme Court accepted jurisdiction.

**{¶18}** The *Chatton* Court found "because the police officer no longer maintained a reasonable suspicion that appellee's vehicle was not properly licensed or registered, to further detain appellee and demand that he produce his driver's license is akin to [a] random detention[.]" *Id.* The Court then concluded, "[a]lthough the police officer, as a matter of courtesy, could have explained to appellee the reason he was initially detained, the police officer could not unite the search to this detention, and appellee should have been free to continue on his way without having to produce his driver's license." *Id.*

**{¶19}** Like the officer in *Chatton*, we find Deputy Flahive no longer maintained a reasonable suspicion Appellant was the registered owner when he illuminated the vehicle as Appellant turned into a parking lot and observed Appellant was not female. Although

the deputy could have explained to Appellant the reason he was initially detained, Deputy Flahive did not have an independent basis to extend Appellant's detention by asking Appellant to produce his identification.   We find Deputy Flahive exceeded the constitutionally permissible scope of the detention, and the trial court erred in failing to grant Appellant's motion to suppress.

{¶20}  Appellant's sole assignment of error is sustained.

{¶21}  The judgment of the Delaware County Municipal Court is reversed and Appellant's convictions are vacated.


By: Hoffman, J.

Gwin, P.J.  and

Wise, John, J. concur